UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------------x
UNITED STATES OF AMERICA                      :
                                              :
    -v-                                       :
                                              :      09-cr-722 (MGC)
PAUL GREENWOOD, and                           :
STEPHEN WALSH,                                :
                 Defendants.                  :
                                              :
------------------------------------------------------------------------x
```

## DECLARATION OF SUSAN R. NECHELES

SUSAN R. NECHELES hereby declares under penalty of perjury:

1.      I am an attorney duly admitted to practice in this Court. I am a partner in

the law firm of Hafetz & Necheles, counsel to Mr. Paul Greenwood in the above-

captioned case and in two parallel civil actions, *Commodity Futures Trading Commission*

*v. Walsh, et. al,* 09-cv-1749 (GBD), and *Securities and Exchange Commission v. WG*

*Trading Investors, et al.*, 09-cv-1750 (GBD). I submit this declaration and the attached

exhibits in support of Mr. Greenwood's Motion for Attorneys' Fees and Costs.

2.      On February 25, 2009, Judge Daniels issued a Statutory Restraining Order

in the CFTC case, *see* Exhibit ('Ex.') A at 5-7, and a Temporary Restraining Order in the

SEC case, *see* Ex. B at 14-16, freezing all of Mr. Greenwood's assets.

3.      On May 22, 2009, Judge Daniels ordered Preliminary Injunctions in the

CFTC and SEC matters, extending the terms of the February 25, 2009 Statutory

Restraining Order and the Temporary Restraining Order until further order of the Court.

*See* Ex. C at 6; Ex. D at 6 . All of Mr. Greenwood's assets are now in the control of the

Receiver appointed in the civil cases. *See* Ex. A. at 8-13; Ex. B at 18-20, Ex. C at 6; Ex. D at 6.

4.      On July 24, 2009, Mr. Greenwood was indicted. *United States v. Greenwood, et al.*, 09-cr-722 (MGC). *See* Ex. E. His arraignment before this Court took place on July 31, 2009, and discovery and motion preparation is currently being conducted in the criminal case.

6.      As set forth in the accompanying Declaration of Paul Greenwood, Mr. Greenwood possesses no unfrozen assets with which to continue to retain counsel of his choice in this criminal case. *See* Greenwood Decl. at 1-2.

7.      **Mr.** Greenwood retained Hafetz & Necheles on March 10, 2009. Mr. Greenwood's relatives paid Hafetz & Necheles a retainer of $250,000. The legal fees to date have been $219,069.30 for representing Mr. Greenwood in the two civil cases before Judge Daniels and in this criminal case. There is $30,930.70 remaining in his account at the firm. We anticipate that as of December 1, 2009, that amount will be reduced to approximately $20,000. If Mr. Greenwood is not afforded access to his untainted assets for the payment of attorneys' fees, Hafetz & Necheles will be unable to continue to represent him in this criminal action.

8.      We estimate that if this case were to go to trial, the legal fees and costs would total approximately $2.4 million. This estimate is based on the following assumptions:

a)      24 weeks of pre-trial preparation at 40 hours per week by Frederick P. Hafetz, billing at $700 per hour, and two attorneys assisting him, each being billed at

$400 per hour, and two paralegals, each being billed at $125 per hour, totaling

$1,680,000 in fees;

      b)     4 weeks of trial at 60 hours per week by Frederick P. Hafetz, two other

attorneys and two paralegals, totaling $420,000 in fees; and

      c)     Pre-trial and trial-related costs, including, but not limited to the creation of

an electronic data base, photocopying, transcripts, and court-room technology, totaling

approximately $300,000.

      9.     We ask at this time that sufficient assets be released from the restraining

order to pay $1 million to Hafetz & Necheles, to allow us to conduct our review of the

facts and law in this case. We note that $1 million is a reasonable figure. The documents

in this case are extensive. The government has estimated that there are over 100 boxes of

documents and there are extensive computer files with unknown amounts of email. As

Judge Kaplan noted in *United States v. Stein*, 495 F.Supp. 2d 390, 424 (S.D.N.Y. 2007),

defense of white collar trials are extremely complicated and expensive. Recent high

profile white collar prosecutions have had publically reported legal costs that ranged from

$14.9 million to $70 million. *Id.* Accordingly, our estimate of $1 million to review

documents and conduct a thorough legal analysis is a conservative estimate.

      10.     Hafetz & Necheles will place that $1 million in our escrow account and

draw down on that $1 million based on monthly hourly billings. A bill will be presented

to the client every month for his review and approval. If Mr. Greenwood's case is

resolved prior to trial, any money left in the escrow account after sentencing or dismissal

of the charges will be returned to the Receiver. If, on the other hand, the case proceeds to

trial we will make a further application for fees from the Court.

11.     At a status conference in the CFTC and SEC actions before Judge Daniels on November 13, 2009, Judge Daniels alerted counsel that he had discussed this anticipated motion with this Court, and that counsel for Mr. Greenwood should make the fee motion to this Court and provide him with copies of the filings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November __, 2009

_____
Susan R. Necheles

# EXHIBIT A

**In The United States District Court**

**For The Southern District Of New York**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    FEB 2 5 2009

COMMODITY FUTURES TRADING )
COMMISSION, )
                      )
       Plaintiff, )
                      )
      v. )
                      )
Stephen Walsh, Paul Greenwood, Westridge )
Capital Management, Inc., WG Trading )
Investors, LP, WGIA, LLC, )
                      )
Defendants, )
                      )
Westridge Capital Management Enhancement )
Funds Inc., WG Trading Company LP,  WGI
LLC, K&L Investments, and Janet Walsh,

       Relief Defendants.

CIVIL ACTION NO.:  09 (V1749/(8AD)
(        ) ORDER GRANTING
MOTION FOR STATUTORY *EX PARTE*
RESTRAINING ORDER, FOR EXPEDITED
DISCOVERY, AND
ORDER TO SHOW CAUSE RE:
PRELIMINARY INJUNCTION

---

    This matter came before the Court on February 25, 2009 on the Motion of Plaintiff U.S.

Commodity Futures Trading Commission (the "Commission" or "Plaintiff") for a: (1) Statutory *Ex*

*Parte* Restraining Order; (2) Order Permitting Immediate, Expedited Discovery; and (3) Order to

Show Cause re: Preliminary Injunction (the "Application").  The Court, having considered the

Commission's Complaint, Motion, Memorandum of Points and Authorities, Exhibits, other

materials in support thereof, all other evidence presented by Plaintiff filed herein, finds that:

        1.    This Court has jurisdiction over the parties and over the subject matter of this action

pursuant to Section 6c of the Commodity Exchange Act, as amended (the "Act") 7 U.S.C. § 13a-1

(2006).

2.      Venue lies properly within this District pursuant to Sections 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006).

3.      There is good cause to believe that the Defendants have engaged, are engaging and/or are about to engage in acts and practices constituting violations of the Act, 7 U.S.C. §§ 1, *et seq.* (2006).

4.      There is good cause to believe that the Relief Defendants, Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet Walsh, received funds and/or property as a result of the Defendants' unlawful conduct and have been unjustly enriched thereby. The Relief Defendants, Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet Walsh, have no legitimate entitlement to or interest in all of the funds and/or property received as a result of the Defendants' unlawful conduct.

5.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for commodity pool participants in the form of monetary redress will occur from the sale, transfer, assignment, or other disposition by Defendants or Relief Defendants of assets or records unless Defendants and Relief Defendants are immediately restrained and enjoined by Order of this Court.

6.      Good cause exists for the freezing of assets owned, controlled, managed or held by, on behalf of, or for the benefit of Defendants (hereinafter "Defendants' Assets") as well as in order to assure payment of restitution and disgorgement as authorized and for the benefit of pool participants. Good cause further exists for the freezing of assets owned, controlled, managed or held by, or on behalf of, or for the benefit of Relief Defendants (hereinafter "Relief Defendants' Assets") as well as in order to assure payment of all funds subject to restitution and disgorgement

2

that the Relief Defendants have been unjustly enriched by, and to which they have no legitimate entitlement or interest, as authorized and for the benefit of pool participants.

7.      Good cause exists for entry of an order prohibiting Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendants from destroying records and denying agents of the Commission access to inspect and copy records to ensure that Commission representatives have immediate and complete access to those books and records.

8.      Good cause exists for entry of an order prohibiting Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Relief Defendants from destroying records and denying agents of the Commission access to inspect and copy records to ensure that Commission representatives have immediate and complete access to those books and records.

9.      Good cause exists to permit expedited discovery before the early meeting of counsel pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, in order to ascertain the existence and location of assets, clarify the source of funds, and identify all pool participants and other investors.

8.      Good cause exists to require an accounting to determine the location and disposition of pool participants' funds.

9.      Good cause exists to order repatriation of assets controlled by Defendants to assure payment of restitution and disgorgement as authorized and for the benefit of pool participants.

10.     Weighing the equities and considering the Commission's likelihood of success in its claims for relief, the issuance of a statutory restraining order is in the public interest.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

11.     The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records (including, but not limited to, floppy diskettes, hard disks, ZIP disks, CD-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as Palm Pilot computers, as well as printouts or readouts from any magnetic storage device), and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

12.     "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts including bank accounts and accounts at financial institutions, credits, receivables, lines of credit, contracts including spot and futures contracts, insurance policies, and all cash, wherever located.

13.     "Defendants" means Stephen Walsh, Paul Greenwood, Westridge Capital Management, Inc., WG Trading Investors, LP, and WGIA, LLC and for all parties includes any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of the Defendants, and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with Defendants.

14.    "Relief Defendants" means Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet Walsh, and for all parties includes any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of the Relief Defendants, and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with Relief Defendants.

## RELIEF GRANTED

### I.

### ORDER AGAINST TRANSFER, DISSIPATION, AND DISPOSAL OF ASSETS

### IT IS HEREBY ORDERED that

15.    Defendants and Relief Defendants are restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets, including those held in the name of Defendants or Relief Defendants, wherever located, including assets held outside the United States, except as provided in Part III of this Order, or as otherwise ordered by the Court. The assets affected by this paragraph shall include both existing assets and assets acquired after the effective date of this Order.

16.    Defendants, Relief Defendants and their agents, servants, employees, attorneys, and persons in active concert or participation with Defendants or Relief Defendants who receive actual notice of this Order by personal service except as otherwise ordered by this Court, are restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any of Defendants' assets or Relief Defendants' assets,

wherever located, including assets held outside the United States, except as provided in Paragraph III of this Order, or as otherwise ordered by the Court. The assets affected by this paragraph shall include both existing assets and assets acquired after the effective date of this Order.

17.     Defendants and Relief Defendants are restrained and enjoined from directly or indirectly opening or causing to be opened any safe deposit boxes titled in the name or subject to access by the Defendants or Relief Defendants.

## II.

## DIRECTIVES TO FINANCIAL INSTITUTIONS AND OTHERS

**IT IS FURTHER ORDERED**, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any Defendants' asset or account, or account established by Defendants on behalf of any other entity or person, including a commodity pool, or Relief Defendants' accounts or assets, or has held, controlled, or maintained custody of any account or asset of the Defendant or Relief Defendants at any time since January 1, 1997, shall:

18.     Prohibit Defendants and Relief Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such asset (other than to margin existing futures or securities positions) except as directed by further order of the Court, *provided that* any Receiver appointed by the Court may, in the execution of his or her duty to preserve the value of any account or asset controlled or managed by Defendants on behalf of another person, either:

- liquidate any futures or securities positions held, controlled or managed by Defendants, or,

- engage in such transactions as deemed necessary to manage the risk associated with any open futures or securities position held, controlled or managed by Defendants.

19.     Deny Defendants and Relief Defendants and all other persons access to any safe deposit box that is: (a) titled in the name of the Defendants or Relief Defendants, either individually or jointly; or (b) otherwise subject to access by the Defendants or Relief Defendants;

20.     Provide counsel for the Commission, within five (5) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of the Defendants or Relief Defendants, or held on behalf of, or for the benefit, of the Defendants or Relief Defendants: (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (c) the identification of any safe deposit box that is either titled in the name, individually or jointly, of the Defendants or Relief Defendants or is otherwise subject to access by the Defendants or Relief Defendants; and

21.     Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

# III.

## TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that:

22.    _Robb Evans & Assic LLC_    is appointed temporary Receiver
       www.RobbEvans.com

for the Defendants' and Relief Defendants' assets and the assets of any affiliates or subsidiaries

of any Defendant or Relief Defendant, with the full powers of an equity receiver. The Receiver

shall be the agent of this Court in acting as Receiver under this Order;

23.    The Receiver is directed and authorized to accomplish the following:

    a.    Assume full control of the corporate Defendants and Relief Defendants

        and any business entities owned by any Defendant or Relief Defendant,

        including but not limited to Stephen Walsh, Paul Greenwood, Westridge

        Capital Management, Inc., WG Trading Investors, LP, WGIA, LLC,

        Westridge Capital Management Enhancement Funds Inc., WG Trading

        Company LP,  WGI LLC, K&L Investments, and Janet Walsh by

        removing any officer, independent contractor, employee, or agent of a

        corporate defendant or corporate relief defendant, from control and

        management of the affairs of the corporate defendant or relief defendant

        and any business entities owned by any Defendant or Relief Defendant;

    b.    Take exclusive custody, control, and possession of all the funds, property,

        mail and other assets of, in the possession of, or under the control of the

        Defendants or Relief Defendants, wherever situated, including but not

        limited to assets held by Stephen Walsh, Paul Greenwood, Westridge

        Capital Management, Inc., WG Trading Investors, LP, WGIA, LLC,

Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet Walsh. The Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Defendants and Relief Defendants, including documents related to customers or clients whose interest are now held by or under the direction, possession, custody or control of the Defendants or Relief Defendants;

c. Take all steps necessary to secure the residential and business premises of the Defendants and Relief Defendants;

d. Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to Defendants' or Relief Defendants' customers or clients;

e. Prevent the withdrawal or misapplication of funds entrusted to the Defendants, or Relief Defendants, and otherwise protect the interests of customers, clients, pool participants or investors;

f. Manage and administer the assets of the Defendants and Relief Defendants by performing all acts incidental thereto that the Receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

g. Collect all money owed to the Defendants and Relief Defendants;

h.   Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the Defendants or Relief Defendants or to carry out his or her duties pursuant to this Order;

i.   Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

j.   Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

k.   Open one or more bank accounts as designated depositories for funds of the Defendants and Relief Defendants.  The Receiver shall deposit all funds of the Defendants and Relief Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts; and

l.   Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Defendants or Relief Defendants prior to the date of entry of this Order, except for payments that the Receiver deems necessary or advisable to secure assets of the Defendants or Relief Defendants.

24.    Immediately upon service of this Order upon them, the Defendants, Relief
Defendants and any other person or entity served with a copy of this Order, shall immediately or
within such time as permitted by the Receiver in writing, deliver over to the Receiver:

a.    Possession and custody of all funds, property, and other assets, owned
beneficially or otherwise, wherever situated, of the Defendants and Relief
Defendants, including but not limited to those of Stephen Walsh, Paul
Greenwood, Westridge Capital Management, Inc., WG Trading Investors,
LP, WGIA, LLC, Westridge Capital Management Enhancement Funds
Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet
Walsh;

b.    Possession and custody of documents of the Defendants and Relief
Defendants, including but not limited to, all books and records of
accounts, all financial and accounting records, balance sheets, income
statements, bank records (including monthly statements, canceled checks,
records of wire transfers, and check registers), client lists, title documents
and other papers;

c.    Possession and custody of all precious metals, other commodities, funds,
and other assets being held by or on behalf of the Defendants or Relief
Defendants or on behalf of the Defendants' customers, clients, pool
participants or investors;

d.    All keys, computer passwords, entry codes, and combinations to locks
necessary to gain or to secure access to any of the assets or documents of
the Defendants or Relief Defendants, including but not limited to, access

11

to the Defendants' and Relief Defendants residential and business premises, means of communication, accounts, computer systems, or other property; and

e.  Information identifying the accounts, employees, properties or other assets or obligations of the Defendants or Relief Defendants.

25.  The Defendants, Relief Defendants and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Receiver under this Order, and advising all persons who owe money to the Defendants or Relief Defendants that all debts should be paid directly to the Receiver.

26.  Except by leave of the Court, during the pendency of the receivership ordered herein, the Defendants, Relief Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Defendants or Relief Defendants, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

a.  Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

b.  Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Defendants or Relief Defendants

12

or any property claimed by the Defendants or Relief Defendants, or attempting to foreclose, forfeit, alter or terminate any of the Defendants' or Relief Defendants' interests in property, whether such acts are part of a judicial proceeding or otherwise;

c.   Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Defendants or Relief Defendants, or the Receiver, or any agent of the Receiver; and

d.   Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Defendants or Relief Defendants.

This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

27.   Within 60 days of the date of this Order, the Receiver shall file with this Court and serve Plaintiff Commission a report outlining the steps taken to identify customers, marshal assets, determine the amount invested by each customer, and the portion of assets available to pay back customers. This report shall also include a statement as to the estimated time it will take to distribute available assets to customers and wind up the receivership.

28.   The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Defendants or Relief Defendants. The Receiver shall file with the Court and serve on the parties, including Plaintiff Commission, periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. Plaintiff Commission may object to any part of a request within 30 calendar days of service of a request. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

**IV.**

**ACCOUNTING AND TRANSFER OF FUNDS AND DOCUMENTS**

**IT IS FURTHER ORDERED** that within ten (10) business days following the service of this Order, the Receiver shall:

29.   Provide the Commission with a full accounting of all Defendants' and Relief Defendants' funds, documents, and assets, including those outside of the United States from January 1, 1997, to the date of this Order;

30.   Transfer to the territory of the United States all Defendants' Assets and documents located outside of the United States; and

31.   Provide the Commission access to all records of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order.

V.

## MAINTENTANCE OF BUSINESS RECORDS

**IT IS FURTHER ORDERED** that:

32.     Defendants, Relief Defendants and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of the Defendant or Relief Defendant.

VI.

## INSPECTION AND COPYING OF BOOKS AND RECORDS

**IT IS FURTHER ORDERED** that:

33.     Representatives of the Commission be immediately allowed to inspect the books, records, and other documents of the Defendants, Relief Defendants, and their agents including, but not limited to, electronically stored data, tape recordings, and computer discs, wherever they may be situated and whether they are on the persons of the Defendants, Relief Defendants or others, and to copy said documents, data and records, either on or off the premises where they may be situated; and

34.     Defendants, Relief Defendants and their agents, servants, employees, attorneys, and persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including facsimile transmission, shall cooperate fully with the Commission to locate and provide to representatives of the Commission all books and records of the Defendants or Relief Defendants, wherever such books and records may be situated.

## VII.

### BOND NOT REQUIRED OF PLAINTIFF

**IT IS FURTHER ORDERED** that:

28.     Plaintiff Commission is an agency of the United States of America and, accordingly,

no bond need be posted by the Commission.

## VIII.

### ORDER TO SHOW CAUSE

**IT IS FURTHER ORDERED** that:

29.     Defendants shall appear before this Court on the 2 day of MARch 2009, at

11:00 A.m., before the United States District Judge DANiEls     at the United

States Courthouse for the Southern District of New York, to show cause, if there be any, why an

Order for Preliminary Injunction should not be granted to prohibit further violations of the Act and

why the other relief requested should not be granted pending trial on the merits of this action.

30.     Should any party wish to file a memorandum of law or other papers in opposition

to Plaintiff's Motion for a Preliminary Injunction, all papers shall be filed on or before Monday,

MARch 2 , 2009 and served no later than MARch 2, 2009

## IX.

### ORDER PERMITTING EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that:

31.     The prohibition upon discovery before the early meeting of counsel is removed

pursuant to Rule 26(d) of the Federal Rules of Civil Procedure.

32.     The prohibition upon the immediate commencement of depositions is removed

pursuant to Rule 30(a)(2)(C) of the Federal Rules of Civil Procedure.

33.     The parties and/or the Temporary Receiver may proceed to take the oral deposition of any person upon three calendar days actual notice if the notice is served upon the parties personally or by telecopier to the party's last known business telecopier number.

34.     The parties and/or the Temporary Receiver may take the deposition of any person for the purpose of discovering the nature, location, status and extent of assets of the Defendants or Relief Defendants and the location of any documents reflecting those assets.

## X.

### SERVICE OF ORDER

IT IS FURTHER ORDERED that:

35.     This Order shall be served on the Defendants and Relief Defendants by personal service consistent with Federal Rule of Civil Procedure Rule 4(e).  All subsequent pleadings, correspondence, notices required by this Order, and other materials shall be served consistent with Federal Rule of Civil Procedure Rule 4.

## XI.

### FORCE AND EFFECT

IT IS FURTHER ORDERED that this Order shall remain in full force and effect until further order of this Court, and that this Court retains jurisdiction of this matter for all purposes.

SO ORDERED, at New York, New York on this 25th day of February 2009.

FEB 2 5 2009

_George B. Daniels_
HON. GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

17

**EXHIBIT B**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   FEB 2 5 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,      :
                                          :
                    Plaintiff,            :
                                          :
             - against -                  :
                                          :
WG TRADING INVESTORS, L.P.,               :      Civ. No. 09 CV 1750
WG TRADING COMPANY, LIMITED PARTNERSHIP,  :
WESTRIDGE CAPITAL MANAGEMENT, INC.,       :
PAUL GREENWOOD and STEPHEN WALSH,         :
                                          :
                                          :
                    Defendants,           :
             - and-                       :
                                          :
ROBIN GREENWOOD and JANET WALSH,          :
                                          :
                    Relief Defendants.    :
--------------------------------------------------------------x

### ORDER TO SHOW CAUSE,
### TEMPORARY RESTRAINING ORDER,
### AND ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF

On the Application of Plaintiff Securities and Exchange Commission (the "Commission")

for an Order:

(1)    directing Defendants WG Trading Investors, L.P. ("WGTI"), WG Trading Company,

Limited Partnership ("WGTC"), Westridge Capital Management, Inc. ("Westridge"), Paul

Greenwood ("Greenwood") and Stephen Walsh ("Walsh") (collectively, "the Defendants") and

relief defendants Robin Greenwood and Janet Walsh (the "Relief Defendants") to show cause

why an order should not be entered, pending a final disposition of this action:

      (a)    preliminarily enjoining the Defendants from violating Section 17(a) of the

          Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and

Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5; and

(b)  preliminarily enjoining defendants Westridge, Greenwood and Walsh from

violating Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of

1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4), and

Advisers Act Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8;

(c)  freezing the Defendants' assets and certain assets of the Relief Defendants as

specified herein;

(d)  directing each of the Defendants and Relief Defendants to provide verified

accountings immediately;

(e)  appointing receivers for Defendants WGTI, WGTC and Westridge;

(f)  prohibiting the destruction or alteration of documents; and

(g)  preliminarily enjoining the Defendants, and their agents, employees, attorneys, or

other professionals, anyone acting in concert with them, and any third party from

filing a bankruptcy proceeding on behalf of the defendants without at least 3 days

notice to the Plaintiff and approval of this Court;

(2)  pending adjudication of the foregoing, an Order

(a)  temporarily restraining the Defendants from violating the aforementioned statutes

and rule;

(b)  freezing the Defendants' assets and certain assets of the Relief Defendants as

specified herein;

2

(c)    directing each of the Defendants and Relief Defendants to provide verified
accountings immediately;

(d)    appointing a temporary receiver for WGTI, WGTC and Westridge;

(e)    prohibiting the destruction and alteration of documents;

(f)    providing that the Commission may take expedited discovery in preparation for a
hearing on this Order to Show Cause; and

(g)    temporarily enjoining the Defendants, and their agents, employees, attorneys, or
other professionals, anyone acting in concert with them, and any third party from
filing a bankruptcy proceeding on behalf of the defendants without at least 3 days
notice to the Plaintiff and approval of this Court.

The Court has considered (1) the Complaint filed by the Commission on February 25,

2009; (2) the Local Rule 6.1 Declaration of Joseph P. Dever; (3) the Declaration of Thomas P.

Smith, Jr., executed on February 25, 2009, and the exhibits annexed thereto; and (4) the

memorandum of law in support of the Commission's application.

Based upon the foregoing documents, the Court finds that a proper showing, as required

by Section 20(b) of the Securities Act, Section 21(d) of the Exchange Act, and Section 209 of the

Advisers Act, has been made for the relief granted herein, for the following reasons:

1.    It appears from the evidence presented that

(a)    the Defendants have violated and, unless temporarily restrained, will
continue to violate, Section 17(a) of the Securities Act and Section 10(b)
of the Exchange Act and Exchange Act Rule 10b-5; and

3

(b)     Defendants Westridge, Greenwood and Walsh have violated, and/or

Defendants Greenwood and Walsh have aided and abetted Defendant

Westridge's violations, and unless temporarily restrained, will continue to

violate, or aid and abet violations of, Sections 206(1), 206(2) and 206(4)

of the Advisers Act and Advisers Act Rule 206(4)-8, as charged in the

Complaint.

2.     It appears that an order freezing the Defendants' assets and certain assets of the

Relief Defendants, as specified herein, is necessary to preserve the *status quo*, and to protect this

Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud

and civil penalties, and to preserve the Court's ability to approve a fair distribution for victims of

the fraud.

3.     It appears that an order requiring each of the Defendants and Relief Defendants to

provide a verified accounting of all assets, money and property held directly or indirectly by each

of the Defendants, or by others for each of their direct and indirect beneficial interest, is

necessary to effectuate and ensure compliance with the freeze imposed on the Defendants' assets.

4.     It appears that the Defendants may attempt to destroy, alter or conceal documents.

5.     It appears that the appointment of a receiver for WGTI, WGTC and Westridge is

necessary to: (i) preserve the status quo; (ii) ascertain the extent of commingling of funds among

WGTI and WGTC; (iii) ascertain the true financial condition of WGTI, WGTC and Westridge

and the disposition of investor funds; (iv) prevent further dissipation of the property and assets of

WGTI, WGTC and Westridge; (v) prevent the encumbrance or disposal of property or assets of

WGTI, WGTC and Westridge and the investors; (vi) preserve the books, records and documents

4

of WGTI, WGTC and Westridge; (vii) be available to respond to investor inquiries; (viii) protect investors' assets; and (ix) determine whether WGTI, WGTC and Westridge should undertake bankruptcy filings.

      6.     Good and sufficient reasons have been shown why procedure other than by notice of motion is necessary.

      7.     The Commission requires expedited discovery to determine, among other things, whether the Defendants are engaged in other ongoing frauds and obtain bank and other records to supplement its motion for preliminary injunctions.

      8.     This Court has jurisdiction over the subject matter of this action and over the Defendants, and venue properly lies in this District.

      **NOW, THEREFORE,**

**I.**

      **IT IS HEREBY ORDERED** that the Defendants show cause, if there be any, to this Court at ___11 : 00___ _a._.m. on the ___3ᴿᴰ___ day of ___MARCH___ 2009, in Room ___15D___ of the United States Courthouse, 500 Pearl Street, New York, New York 10007 why this Court should not enter an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, Section 20 of the Securities Act, Section 21 of the Exchange Act, and Section 209 of the Advisers Act preliminarily enjoining

      (1)    the Defendants from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5; and

      (2)    Defendants Westridge, Greenwood and Walsh from violating Sections 206(1), 206(2) and 206(4) of the Advisers Act and Advisers Act Rule 206(4)-8.

5

## II.

**IT IS FURTHER ORDERED** that Defendants show cause at that time why this Court

should not also enter an Order directing that, pending a final disposition of this action,

Defendants, and each of their financial and brokerage institutions, officers, agents, servants,

employees, attorneys-in-fact, and those persons in active concert or participation with them who

receive actual notice of such Order by personal service, facsimile service or otherwise, and each

of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer,

pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets,

funds, or other property (including money, real or personal property, securities, commodities,

choses in action or other property of any kind whatsoever) of, held by, or under the control of

Defendants, whether held in their names or for their direct or indirect beneficial interest wherever

situated, including, but not limited to, all assets, funds, or other properties held in the following

accounts:

| Account Number | Institution | Name of Account Holder |
|---|---|---|
| 6138020 | United States Trust Co of New York | Paul R. Greenwood |
| 00006138020 | Bank of America | Paul R. Greenwood |
| 1010001737594 | Wachovia | Paul R. Greenwood/Alberta Reilly |
| 17186495 | Citibank | Stephen Walsh |

6

## III.

IT IS FURTHER ORDERED that Relief Defendants Robin Greenwood and Janet

Walsh show cause at that time why this Court should not also enter an Order directing that,

pending a final disposition of this action, the Relief Defendants, and each of her financial and

brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons

in active concert or participation with them who receive actual notice of such Order by personal

service, facsimile service or otherwise, and each of them, hold and retain within their control, and

otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation,

concealment or other disposal of the following account held by, or under the control of the Relief

Defendants, whether held in her name or for her direct or indirect beneficial interest:

| Account Number | Institution | Name of Account Holder |
|---|---|---|
| 9841944904 | M&T Bank | Robin B. Greenwood |
| 7372770145 | Fleet Bank of New York | Robin Greenwood |
| 003774342509 | Bank of America | Janet B. Walsh |

## IV.

IT IS FURTHER ORDERED that Defendants Greenwood and Walsh show cause at

that time why this Court should not also enter an Order directing that, pending a final disposition

of this action, Defendants Greenwood and Walsh, and any of their agents, servants, employees,

attorneys-in-fact, those persons in active concert or participation with them, and any other

persons or entities, including, but not limited to, persons or entities who hold a security interest

in the property identified below, who receive actual notice of such Order by personal service,

facsimile service or otherwise, and each of them, are restrained and enjoined from taking any

7

action to transfer, pledge, seize, sell, foreclose, encumber, assign, dissipate, conceal or otherwise

taking any action whatsoever that would impact or impair the value of the residences located at:

    a.    16 Wheeler Road, North Salem, NY 10560; and

    b.    7 Half Moon Lane, Sands Point, NY 11050.

V.

    **IT IS FURTHER ORDERED** that Defendants show cause at that time why this Court

should not also enter an Order directing that, pending a final disposition of this action, the

Defendants, and each of their agents, employees, attorneys, or other professionals, and anyone

acting in concert with them, any third parties and any other persons or entities who receive actual

notice of such Order by personal service, facsimile service or otherwise, and each of them, are

restrained and enjoined from filing for bankruptcy protection for any of the Defendants and their

assets without 3 days notice to the Plaintiffs and approval by this Court.

VI.

    **IT IS FURTHER ORDERED** that the Defendants show cause at that time why this

Court should not also enter an Order directing that they each file with this Court and serve upon

Plaintiff Commission, within three (3) business days, or within such extension of time as the

Commission agrees to, a verified written accounting, signed by each of the Defendants and Relief

Defendants, and under penalty of perjury, of:

    (1)    All assets, liabilities and property currently held, directly or indirectly, by or for

        the benefit of the Defendants, including, without limitation, bank accounts,

        brokerage accounts, investments, business interests, loans, lines of credit, and real

8

and personal property wherever situated, describing each asset and liability, its
current location and amount;

(2)     All money, property, assets and income received by the Defendants and Relief
Defendants and each of them, or for their direct or indirect benefit, at any time
from March 1, 1996 through the date of such accounting, describing the source,
amount, disposition and current location of each of the items listed;

(3)     The names and last known addresses of all bailees, debtors, and other persons and
entities that currently are holding the assets, funds or property of the Defendants;
and

(4)     All assets, funds, securities, and real or personal property received by the
Defendants and Relief Defendants, and each of them, or any other person
controlled by them, from persons who provided money to the Defendants and
Relief Defendants in connection with the offer, purchase or sale of WGTI
securities, from March 1, 1996 to the date of the accounting, and the disposition
of such assets, funds, securities, real or personal property.

## VII.

**IT IS FURTHER ORDERED** that the Defendants and the Relief Defendants show
cause at that time why this Court should not also enter an Order enjoining and restraining them,
and any person or entity acting at their direction or on their behalf, from destroying, altering,
concealing or otherwise interfering with the access of the Commission and the Receiver to any
and all documents, books, and records, that are in the possession, custody or control of the
Defendants, Relief Defendants, their officers, agents, employees, servants, accountants, financial

9

or brokerage institutions, or attorneys-in-fact, subsidiaries, affiliates, predecessors, successors and related entities, that refer, reflect or relate to the allegations in the Complaint, including, without limitation, documents, books, and records referring, reflecting or relating to the Defendants' or Relief Defendants' finances or business operations, or the offer, purchase or sale of WGTI securities and the use of proceeds therefrom.

## VIII.

**IT IS FURTHER ORDERED** that the Defendants show cause at that time why this Court should not also enter an Order appointing or continuing the appointment of a receiver for WGTI, WGTC and Westridge, to (i) preserve the status quo, (ii) ascertain the extent of commingling of funds among WGTI, WGTC and Westridge; (iii) ascertain the true financial condition of WGTI, WGTC and Westridge and the disposition of investor funds; (iv) prevent further dissipation of the property and assets of WGTI, WGTC and Westridge; (v) prevent the encumbrance or disposal of property or assets of WGTI, WGTC and Westridge and the investors; (vi) preserve the books, records and documents of WGTI, WGTC and Westridge; (vii) be available to respond to investor inquiries; (viii) protect the assets of WGTI, WGTC and Westridge from further dissipation; and (ix) determine whether WGTI, WGTC and Westridge should undertake bankruptcy filings.

To effectuate the foregoing, the receiver would be empowered to:

(a)     Take and retain immediate possession and control of all of the assets and property, and all books, records and documents of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in, and the rights and powers of it with respect thereto;

10

(b)     Have exclusive control of, and be made the sole authorized signatory for, all
accounts at any bank, brokerage firm or financial institution that has possession or
control of any assets or funds of WGTI, WGTC and Westridge and all entities
they control or have an ownership interest;

(c)     Pay from available funds necessary business expenses required to preserve the
assets and property of the WGTI, WGTC and Westridge and all entities they
control or have an ownership interest, including the books, records, and
documents of WGTI, WGTC and Westridge and all entities they control or have
an ownership interest in, notwithstanding the asset freeze imposed by paragraphs
II, III and IV, above;

(d)     Take preliminary steps to locate assets that may have been conveyed to third
parties or otherwise concealed;

(e)     Take preliminary steps to ascertain the disposition and use of funds obtained by
Greenwood and Walsh resulting from the sale of securities issued by WGTI;

(f)     Engage and employ persons, including accountants, attorneys and experts, to
assist in the carrying out of the receiver's duties and responsibilities hereunder;

(g)     Report to the Court and the parties within 45 days from the date of the entry of
this Order, subject to such reasonable extensions as the Court may grant, the
following information:

1.      All assets, money, funds, securities, and real or personal property then held
directly or indirectly by or for the benefit of WGTI, WGTC and Westridge and all
entities they control or have an ownership interest in, including, but not limited to,

11

real property, bank accounts, brokerage accounts, investments, business interests,
personal property, wherever situated, identifying and describing each asset, its
current location and value;

2.     A list of secured creditors and other financial institutions with an interest
in the receivership assets;

3.     To the extent practicable, a list of investors in WGTI, WGTC and
Westridge and all entities they control or have an ownership interest;

(h)     The Receiver's preliminary plan for the administration of the assets of the
receivership, including a recommendation regarding whether bankruptcy cases
should be filed for all of a portion of the assets subject to the receivership and a
recommendation whether litigation against third parties should be commenced on
a contingent fee basis to recover assets for the benefit of the receivership.

## IX.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the
Commission's Application for Preliminary Injunction, the Defendants, and each of them, their
agents, servants, employees, and attorneys-in-fact, and those persons in active concert or
participation with them who receive actual notice of this Order by personal service, facsimile
service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert,
in the offer or sale of any security, by use of any means or instruments of transportation or
communication in interstate commerce or by use of the mails:

(a)     employing any device, scheme or artifice to defraud;

12

    (b)    obtaining money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)    engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Section 17(a) of the Securities Act.

## X.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for Preliminary Injunction, the Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, in connection with the purchase or sale of any security, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange:

    (a)    employing any device, scheme, or artifice to defraud;

    (b)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

## XI.

13

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for Preliminary Injunction, Defendants Westridge, Greenwood and Walsh, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, while acting as an investment adviser or associated person of an investment adviser, by the use of any means or instrumentality of interstate commerce, or of the mails:

(a)     employing any device, scheme, or artifice to defraud any client or prospective client; or

(b)     engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any client or prospective client, or

(c)     engaging in any act, practice, or course of business which is fraudulent, deceptive or manipulative,

in violation of Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

## XII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants, and each of their financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, hold and retain

14

within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the Defendants, whether held in any of their names or for any of their direct or indirect beneficial interest wherever situated, including, but not limited to, all assets, funds, or other properties held in the following accounts:

| Account Number | Institution | Name of Account Holder |
|---|---|---|
| 6138020 | United States Trust Co of New York | Paul R. Greenwood |
| 000006138020 | Bank of America | Paul R. Greenwood |
| 1010001737594 | Wachovia | Paul R. Greenwood/Alberta Reilly |
| 17186495 | Citibank | Stephen Walsh |

## XIII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Relief Defendants, and each of her financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of the following account held by, or under the control of the Relief Defendants, whether held in her name or for her direct or indirect beneficial interest:

| Account Number | Institution | Name of Account Holder |
|---|---|---|

15

| 9841944904 | M&T Bank | Robin B. Greenwood |
| 7372770145 | Fleet Bank of New York | Robin Greenwood |
| 003774342509 | Bank of America | Janet B. Walsh |

### XIV.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for Preliminary Injunction, Defendants Greenwood and Walsh, and any of their agents, servants, employees, attorneys-in-fact, those persons in active concert or participation with them, and any other persons or entities, including but not limited to persons or entities who hold a security interest in the property identified below, who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, are temporarily restrained from, directly or indirectly, singly or in concert, taking any action to transfer, pledge, seize, sell, foreclose, encumber, assign, dissipate, conceal or otherwise taking any action whatsoever that would impact or impair the value of the residences located at:

      a.     16 Wheeler Road, North Salem, NY 10560; and

      b.     7 Half Moon Lane, Sands Point, NY 11050.

### XV.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants, and each of their agents, employees, attorneys, or other professionals, and anyone acting in concert with them, any third parties, and any other persons or entities who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, are temporarily restrained and enjoined

16

from filing for bankruptcy protection for any of the Defendants and their assets without 3 days notice to the Plaintiffs and approval by this Court.

## XVI.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants file with this Court and serve upon Plaintiff Commission, within three (3) business days, or within such extension of time as the Commission agrees to, a verified written accounting signed by each of the Defendants and Relief Defendants under penalty of perjury, of:

(1)     All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of the Defendants, including, without limitation, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)     All money, property, assets and income received by the Defendants and Relief Defendants, and each of them, or for their direct or indirect benefit, at any time from March 1, 1996 through the date of such accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)     The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of the Defendants; and

(4)     All assets, funds, securities, and real or personal property received by the Defendants, and each of them, or any other person controlled by them, from

17

persons who provided money to the Defendants and Relief Defendants in

connection with the offer, purchase or sale of WGTI securities, from March 1,

1996 to the date of the accounting, and the disposition of such assets, funds,

securities, real or personal property.

## XVII.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application for a Preliminary Injunction, the Defendants, the Relief Defendants,

and any person or entity acting at their direction or on their behalf, be and hereby are enjoined

and restrained from destroying, altering, concealing or otherwise interfering with the access of

the Commission and the Receiver to any and all documents, books, and records that are in the

possession, custody or control of the Defendants and Relief Defendants, their officers, agents,

employees, servants, accountants, financial or brokerage institutions, or attorneys-in-fact, that

refer, reflect or relate to the allegations in the Complaint, including, without limitation,

documents, books and records referring, reflecting or relating to the Defendants' and Relief

Defendants' finances or business operations, or the offer, purchase, or sale of WGTI securities

and the use of proceeds therefrom; and ordered to provide all reasonable cooperation to the

receiver in carrying out his duties as set forth herein.

## XVIII.

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC WWW. Robb Evans, com pending further

order of this Court, be and hereby is appointed to act as receiver for WGTI, WGTC and

Westridge, to (1) preserve the *status quo*; (2) ascertain the extent of commingling of funds

among WGTI, WGTC and Westridge; (3) ascertain the true financial condition of WGTI, WGTC

18

and Westridge and the disposition of investor funds; (4) prevent further dissipation of the property and assets of WGTI, WGTC and Westridge; (5) prevent the encumbrance or disposal of property or assets of WGTI, WGTC and Westridge and the investors; (6) preserve the books, records and documents of WGTI, WGTC and Westridge; (7) be available to respond to investor inquiries; (8) protect the assets of WGTI, WGTC and Westridge from further dissipation; and (9) determine if WGTI, WGTC and Westridge should undertake a bankruptcy filing. To effectuate the foregoing, the receiver is hereby empowered to:

    (a)    Take and retain immediate possession and control of all of the assets and property of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in, and all books, records and documents of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in, and the rights and powers of it with respect thereto;

    (b)    Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any assets or funds of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in;

    (c)    succeed to all rights to manage all properties owned or controlled, directly or indirectly, by WGTI, WGTC and Westridge;

    (d)    Pay from available funds necessary business expenses required to preserve the assets and property of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in, including the books, records, and documents of

the WGTI, WGTC and Westridge, notwithstanding the asset freeze imposed by
paragraph XII, XIII and XIV, above;

(e)  Take preliminary steps to locate assets that may have been conveyed to third
parties or otherwise concealed;

(f)  Take preliminary steps to ascertain the disposition and use of funds obtained by
Greenwood and Walsh resulting from the sale of securities issued by WGTI;

(g)  Engage and employ persons, including accountants, attorneys and experts, to
assist in the carrying out of the receiver's duties and responsibilities hereunder;

(h)  Take all necessary steps to gain control of the Defendants' interests in assets in
foreign jurisdictions, and those funds maintained in accounts at foreign
institutions, which may be proceeds of Defendants' fraud, including but not
limited to taking steps necessary to repatriate foreign assets.

(i)  Take such further action as the Court shall deem equitable, just and appropriate
under the circumstances upon proper application of the receiver.

### XIX.

IT IS FURTHER ORDERED that the Defendants shall pay the reasonable costs, fees and
expenses of the receiver incurred in connection with the performance of his duties described
herein, including, but not limited to, the reasonable costs, fees and expenses of all persons who
may be engaged or employed by the receiver to assist him in carrying out his duties and
obligations. All applications for costs, fees and expenses of the receiver and those employed by
him shall be made by application to the Court setting forth in reasonable detail the nature of such

20

costs, fees and expenses and shall conform to the Fee Guidelines that will be supplied by the U.S.
Securities and Exchange Commission.

## XX.

**IT IS FURTHER ORDERED** that discovery is expedited as follows: pursuant to Rules
26, 30, 31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure ("F.R.C.P."), and without
the requirement of a meeting pursuant to F.R.C.P. 26(f), the Commission and the Receiver may:

    (1)    Take depositions, subject to three (3) days' notice by facsimile or otherwise;

    (2)    Obtain the production of documents, within three (3) days from service by
facsimile or otherwise of a request or subpoena, from the Defendants or Relief
Defendants, or any other persons or entities, including non-party witnesses;

    (3)    Obtain other discovery from the Defendants and Relief Defendants, including
further interrogatories and requests for admissions, within three (3) days from the
date of service by facsimile or otherwise of such other discovery requests,
interrogatories, or requests for admissions;

    (4)    Service of any discovery requests, notices, or subpoenas may be made by personal
service, facsimile, overnight courier, or first-class mail; and

    (5)    The receiver may take discovery in this action without further order of the Court.

## XXI.

**IT IS FURTHER ORDERED** that a copy of this Order and the papers supporting the
Commission's Application be served upon the Defendants and Relief Defendants on or before _4PM_,
_Thursday_, _February 26th_, 2009, by personal delivery, facsimile, overnight courier,
email, or first-class mail.

-21

## XXII.

IT IS FURTHER ORDERED that the Defendants and Relief Defendants shall deliver

any opposing papers in response to the Order to Show Cause above no later than *Monday*

*March 2nd*, 2009, at 4:00 p.m.  Service shall be made by delivering the papers, using the

most expeditious means available, by that date and time, to the New York Regional Office of the

Commission at 3 World Financial Center, Suite 400, New York, New York 10281, Attn: Joseph

P. Dever, Esq., or such other place as counsel for the Commission may direct in writing.  The

Commission shall have until *March 3RD*, 2009, at *11:00AM* ~~5:00 p.m.~~, to serve, by the most

expeditious means available, any reply papers upon the Defendants, or upon their counsel, if

counsel shall have made an appearance in this action then.

## XXIII.

IT IS FURTHER ORDERED that this Order shall be, and is, binding upon the

Defendants and Relief Defendants, and each of their officers, agents, servants, employees and

attorneys-in-fact, and those persons in active concert or participation with them who receive

actual notice of this Order by personal service, facsimile service, email or otherwise.


*George B. Daniel*

UNITED STATES DISTRICT JUDGE
HON. GEORGE B. DANIELS

Issued at : _____:_____ __.m.
          _____, 2009
          New York, New York

22

**EXHIBIT C**

DonicLs/J

**In The United States District Court**
**For The Southern District Of New York**



COMMODITY FUTURES TRADING
COMMISSION,
            Plaintiff,

vs.

STEPHEN WALSH, PAUL GREENWOOD,
WESTRIDGE CAPITAL MANAGEMENT,
INC., WG TRADING INVESTORS, LP, WGIA,
LLC,
            Defendants,

WESTRIDGE CAPITAL MANAGEMENT
ENHANCEMENT FUNDS INC., WG
TRADING COMPANY LP, WGI LLC, K&L
INVESTMENTS, AND JANET WALSH,

            Relief Defendants.

Civil Action No: 09-CV-1749
(GBD)

███████ Order of Preliminary
Injunction Against Defendants

ECF Case

## ORDER OF PRELIMINARY INJUNCTION AGAINST DEFENDANTS

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission") has filed a

Complaint against Defendants Stephen Walsh, Paul Greenwood, Westridge Capital

Management, Inc., WG Trading Investors, LP, and WGIA, LLC (collectively "Defendants") and

Relief Defendants WG Trading Company LP, Westridge Capital Management Enhancement

Funds, Inc., WGI LLC, K&L Investments, and Janet Walsh (collectively "Relief Defendants")

for Permanent Injunction, Civil Penalties, and Other Equitable Relief, and moved for an *Ex Parte*

Statutory Restraining Order and Preliminary Injunction.  The Court issued a Statutory

Restraining Order on February 25, 2009, which remains in effect until further order of this Court.

As it appears to the Court that there is good cause to believe that Defendants have

engaged, are engaging in, or are about to engage in violations of the Commodity Exchange Act,

as amended ("Act") 7 U.S.C. §§ 1 *et. seq.* (2006), and that this is a proper case for granting a preliminary injunction to preserve the *status quo*, protect public customers from further loss and damage, and enable the Commission to fulfill its statutory duties, the Court enters this Order as follows:

**DEFINITIONS**

For the purposes of this Order, the following definitions apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, contracts, insurance policies, and all cash, wherever located, whether in the United States or abroad.

2.      The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonable usable form. A draft or non-identical copy is a separate document within the meaning of the term.

3.      The term "Defendants" refers to Stephen Walsh, Paul Greenwood, Westridge Capital Management, Inc., WG Trading Investors, LP, and WGIA, LLC, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of any of the Defendants, and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with any of the Defendants.

2

4.      The term "Relief Defendants" refers to Westridge Capital Management
Enhancement Funds, Inc., WG Trading Company LP, WGI, LLC, K&L Investments, and Janet
Walsh.

### I.

#### *Jurisdiction and Venue*

**IT IS HEREBY ORDERED** that:

5.      This Court has jurisdiction over the Defendants and the subject matter of this case
pursuant to Section 6c(a) of the Commodity Exchange Act (the "Act") 7 U.S.C. § 13a-1(a)
(2006), which authorizes the Commission to seek injunctive relief against any person whenever
it shall appear that such person has engaged, is engaging, or is about to engage in any act or
practice constituting a violation of any provision of the Act or any rule, regulation, or order
thereunder.

6.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.
§ 13a-1(e), in that Defendants are found, inhabit, or transact business in this district, and the acts,
practices, and conduct that allegedly violated the Act has occurred, is occurring, or is about to
occur within this district, among other places.

### II.

#### *Prohibition from Violating the Act*

**IT IS HEREBY ORDERED** that:

7.      Defendants, except as otherwise ordered by this Court, are restrained and
preliminarily enjoined from directly or indirectly:

A.      Cheating or defrauding or attempting to cheat or defraud other persons, or
        willfully deceiving or attempting to deceive by any means whatsoever other

3

persons in or in connection with orders to make, or the making of, contracts of
sale of commodities, for future delivery, made, or to be made, for or on behalf of
such other persons where such contracts for future delivery were or may have
been used for (a) hedging any transaction in interstate commerce in such
commodity, or the produce or byproducts thereof, or (b) determining the price
basis of any transaction in interstate commerce in such commodity, or
(c) delivering any such commodity sold, shipped or received in interstate
commerce for the fulfillment thereof in violation of Sections 4b(a)(2)(i) and (iii)
of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006);

B.    in or in connection with any order to make, or the making of, any contract of sale
of any commodity in interstate commerce or for future delivery that is made, or to
be made, on or subject to the rules of a designated contract market, for or on
behalf of any other person – (A) cheating or defrauding or attempting to cheat or
defraud the other person; or (C) willfully deceiving or attempting to deceive the
other person by any means whatsoever in regard to any order or contract or the
disposition or execution of any order or contract, or in regard to any act of agency
performed, with respect to any order or contract for the other person in violation
of Sections 4b(a)(1)(A) and (C) of the Act as amended by the CFTC
Reauthorization Act ("CRA"), §§ 13101-13204, 122 Stat. 1651 (effective June 18,
2008) to be codified at 7 U.S.C. §§ 6b (a)(1)(A) and (C); or

C.    engaging in any activity related to trading in any commodity, as that term is
defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4), ("commodity interest"),
including but not limited to the following:

4

(1)      Trading on or subject to the rules of any registered entity, at that

term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

(2)      Engaging in, controlling or directing the trading for any

commodity interest account for or on behalf of any other person or entity,

whether by power of attorney or otherwise;

(3)      Soliciting, receiving, or accepting any funds from any person in

connection with the purchase or sale of any commodity interest contract;

Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as

provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)

(2008), or acting as a principal, agent or any other officer or employee of

any person registered, exempted from registration or required to be

registered with the Commission, except as provided for in Commission

Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2008);

(4)      Entering into any commodity interest transactions for his or its

own personal accounts, for any account in which he or it has a direct or

indirect interest and/or having any commodity interests traded on his or its

behalf; and/or

(5)      Engaging in any business activities related to commodity interest

trading.

5

## III.

### *Continued Force and Effect of Statutory Restraining Order*

**IT IS HEREBY ORDERED** that:

8.     The Court's February 25, 2009 Statutory Restraining Order ("SRO") shall continue in full force and effect against Defendants until further order of the Court. Defendants shall comply fully with all requirements of the SRO including, but not limited to, the requirements pertaining to the: (1) asset freeze, (2) directives to financial institutions and others, (3) maintenance and access to business records, and (4) inspection and copying of books and records. The SRO's prohibition against transfer, dissipation, and disposal of assets shall continue to apply to all assets directly or indirectly under the control of any of the Defendants.

### IV.

### *Continued Force and Effect of Court's Appointment of Receiver*

**IT IS HEREBY ORDERED** that:

9.     The Receiver appointed under this Court's SRO shall continue to serve as Receiver in this proceeding with all of the duties and powers set forth in the SRO. Pursuant to the SRO, Defendants, and all other persons or entities served with a copy of the SRO shall cooperate fully with and assist the Receiver.

### V.

### *Service of Order*

**IT IS HEREBY ORDERED** that:

10.     Copies of this Order may be served by any means, including facsimile transmission and electronic mail, upon any financial institution or other entity or person that may

6

have possession, custody, or control of any documents or assets of Defendants or that may be subject to any provision of this Order.

## VI.

### *Service on the Commission*

IT IS HEREBY ORDERED that:

11.     Defendants shall serve all notices and other such materials required by this Order, and other materials on the Commission by delivering a copy to Paul G. Hayeck, Associate Director, and Peter M. Haas, Chief Trial Attorney, Division of Enforcement, U.S. Commodity Futures Trading Commission, 1155 21st, N.W. Washington, DC 20581 via FedEx or other reliable overnight delivery service.

## VII.

### *Force and Effect of Order*

IT IS HEREBY ORDERED that:

12.     This Order shall remain in full force and effect until further order of this Court, and that this Court retains jurisdiction of this matter for all purposes.


SO ORDERED, this _____ day of May, 2009.
         MAY 2 1 2009

                                    George B Daniels
                                    George B. Daniels
                                    UNITED STATES DISTRICT JUDGE
                                    HON. GEORGE B. DANIELS

7

CONSENT TO RELEASE OF FINANCIAL RECORDS

I, _____ __, do hereby direct any bank or trust company at which I
have a bank account of any kind upon which I am authorized to draw, and its officers, employees
and agents, to disclose all information and deliver copies of all documents of every nature in
your possession or control which relate to said bank accounts to any attorney of the U.S.
Commodity Futures Trading Commission, and to give evidence relevant thereto, in the matter of
*U.S. Commodity Futures Trading Commission v. Stephen Walsh, Paul Greenwood, et al.,* now
pending before the United States District Court for the Southern District of New York, and this
shall be irrevocable authority for so doing.  This direction is intended to apply to the laws of
countries other than the United States which restrict or prohibit the disclosure of bank
information without the consent of the holder of the account, and shall be construed as consent
with respect thereto, and the same apply to any of the bank accounts for which I may be a
relevant principal.

Dated: _____ ___ __ __, 2009


_____
Signature

8

**EXHIBIT D**

**In The United States District Court**
**For The Southern District Of New York**



------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,      :

           **Plaintiff,**      :

      - against -      :

WG TRADING INVESTORS, L.P.,      :      09-cv-1750 (GBD)
WG TRADING COMPANY, LIMITED PARTNERSHIP,      :
WESTRIDGE CAPITAL MANAGEMENT, INC.,      :      ECF Case
PAUL GREENWOOD and STEPHEN WALSH,      :

         **Defendants,**      :
      - and-      :

ROBIN GREENWOOD and JANET WALSH,      :

        **Relief Defendants.**      :
------------------------------------------------------------x

## ORDER OF PRELIMINARY INJUNCTION

Plaintiff, U.S. Securities and Exchange Commission ("Commission") has filed a Complaint against Defendants WG Trading Investors, L.P., WG Trading Company Limited Partnership, Westridge Capital Management, Inc., Paul Greenwood and Stephen Walsh, (collectively "Defendants") and Relief Defendants Robin Greenwood and Janet Walsh (collectively "Relief Defendants") for Permanent Injunction, Civil Penalties, and Other Equitable Relief, and moved for an *Ex Parte* Temporary Restraining Order and Preliminary Injunction. The Court issued a Temporary Restraining Order on February 25, 2009, which remains in effect until further order of this Court.

As it appears to the Court that there is good cause to believe that Defendants have engaged, are engaging in, or are about to engage in violations of the Securities Act of 1933 [15



U.S.C. § 77(a) et seq.], the Securities Exchange Act of 1934 [15 U.S.C. § 78a et seq.], and the Investment Advisers Act of 1940 [15 U.S.C. § 80b-1 et seq.], and that this is a proper case for granting a preliminary injunction to preserve the *status quo*, protect public customers from further loss and damage, and enable the Commission to fulfill its statutory duties, the Court enters this Order as follows:

**DEFINITIONS**

For the purposes of this Order, the following definitions apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, contracts, insurance policies, and all cash, wherever located, whether in the United States or abroad.

2.      The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonable usable form. A draft or non-identical copy is a separate document within the meaning of the term.

3.      The term "Defendants" refers to WG Trading Investors, L.P., WG Trading Company Limited Partnership, Westridge Capital Management, Inc., Paul Greenwood, and Stephen Walsh, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of any of the Defendants, and any person who receives actual

notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with any of the Defendants.

I.

### *Jurisdiction and Venue*

**IT IS HEREBY ORDERED** that:

4.     This Court has jurisdiction over the Defendants and the subject matter of this case pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

5.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein.

II.

### *Prohibitions from Violating Section 17(a) of the Securities Act*

**IT IS HEREBY ORDERED** that

7.     Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are preliminarily enjoined and restrained from, directly or indirectly, singly or in concert, in the offer or sale of any security, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a)     employing any device, scheme or artifice to defraud;

     (b)    obtaining money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

     (c)    engaging in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in violation of Section 17(a) of the Securities Act.

### III.

### *Prohibitions from Violating Section 10(b) of the Securities Exchange Act and Rule 10b-5 Thereunder*

**IT IS HEREBY ORDERED** that,

8.    Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are preliminarily enjoined and restrained from, directly or indirectly, singly or in concert, in connection with the purchase or sale of any security, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange:

     (a)    employing any device, scheme, or artifice to defraud;

     (b)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

     (c)    engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## IV.

### *Prohibitions from Violating Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act and Rule 206(4)-8 Thereunder*

**IT IS HEREBY ORDERED** that,

9.      Defendants Westridge, Greenwood and Walsh, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are preliminarily enjoined and restrained from, directly or indirectly, singly or in concert, while acting as an investment adviser or associated person of an investment adviser, by the use of any means or instrumentality of interstate commerce, or of the mails:

(a)      employing any device, scheme, or artifice to defraud any client or prospective client; or

(b)      engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any client or prospective client, or

(c)      engaging in any act, practice, or course of business which is fraudulent, deceptive or manipulative,

in violation of Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

V.

### Continued Force and Effect of Temporary Restraining Order

**IT IS HEREBY ORDERED** that:

10. The Court's February 25, 2009 Order to Show Cause, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief ("TRO") shall continue in full force and effect against Defendants until further order of the Court. Defendants shall comply fully with all requirements of the TRO including, but not limited to, the requirements pertaining to the: (1) asset freeze, (2) directives to financial institutions and others, (3) maintenance and access to business records, and (4) inspection and copying of books and records. The TRO's prohibition against transfer, dissipation, and disposal of assets shall continue to apply to all assets directly or indirectly under the control of any of the Defendants.

VI.

### Continued Force and Effect of Court's Appointment of Receiver

**IT IS HEREBY ORDERED** that:

11. The Receiver appointed under this Court's TRO shall continue to serve as Receiver in this proceeding with all of the duties and powers set forth in the TRO. Pursuant to the TRO, Defendants and all other persons or entities served with a copy of the TRO shall cooperate fully with and assist the Receiver.

## VII.

### *Service of Order*

**IT IS HEREBY ORDERED** that:

12.   Copies of this Order may be served by any means, including facsimile transmission and electronic mail, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Defendants, or that may be subject to any provision of this Order.

## VIII.

### *Service on the Commission*

**IT IS HEREBY ORDERED** that:

13.   Defendants shall serve all notices and other such materials required by this Order, and other materials on the Commission by delivering a copy to Paul G. Gizzi, Senior Trial Counsel, and Thomas P. Smith, Jr., Senior Counsel, Division of Enforcement, U.S. Securities and Exchange Commission, 3 World Financial Center, Suite 400, New York, NY 10281 via FedEx or other reliable overnight delivery service.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IX.

*Force and Effect of Order*

**IT IS HEREBY ORDERED** that:

14.     This Order shall remain in full force and effect until further order of this Court,

and that this Court retains jurisdiction of this matter for all purposes.

SO ORDERED, this _____ day of _____, 2009.

MAY 2 1 2009

_George B. Daniels_
George B. Daniels
UNITED STATES DISTRICT JUDGE
N. GEORG⸱ ⸱ ⸱ ⸱ ⸱ELS

CONSENT TO RELEASE OF FINANCIAL RECORDS

I, ___ _____ _____, do hereby direct any bank or trust company at which I have a bank account of any kind upon which I am authorized to draw, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relate to said bank accounts to any attorney of the U.S. Securities and Exchange Commission, and to give evidence relevant thereto, in the matter of *Securities and Exchange Commission v. WG Trading Investors, L.P., et al.*, now pending before the United States District Court for the Southern District of New York, and this shall be irrevocable authority for so doing. This direction is intended to apply to the laws of countries other than the United States which restrict or prohibit the disclosure of bank information without the consent of the holder of the account, and shall be construed as consent with respect thereto, and the same apply to any of the bank accounts for which I may be a relevant principal.

Dated: _____ . _____, 2009

_____
Signature

# EXHIBIT E

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 2 4 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

        -v-                     :       **INDICTMENT**

PAUL GREENWOOD, and             :       **09 CRIM 722**
STEPHEN WALSH,

                                :
        Defendants.

- - - - - - - - - - - - - - - x


## COUNT ONE

### (Conspiracy To Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

#### Relevant Persons and Entities

1.    At all relevant times, PAUL GREENWOOD and STEPHEN
WALSH, the defendants, were the Managing General Partners of WG
Trading Company Limited Partnership ("WG Trading"), a Delaware
limited partnership operating as a commodity pool.  GREENWOOD
also was the Chief Operating Officer and Chief Financial Officer
of WG Trading.  WALSH also was the Chief Executive Officer and
senior registered options principal of WG Trading.

2.    At all relevant times, WG Trading was a
broker-dealer registered with the Securities and Exchange
Commission ("SEC") under the Securities Exchange Act of 1934, and
a commodity pool as defined in regulations of the Commodity
Futures Trading Commission ("CFTC").  WG Trading had offices in
Greenwich, Connecticut, Jersey City, New Jersey, and North Hills,

New York, and executed securities trades through the New York
Stock Exchange in New York, New York.

      3.    At all relevant times, PAUL GREENWOOD and STEPHEN
WALSH, the defendants, were registered with the SEC as principals
of a registered broker-dealer and with the CFTC as commodity pool
operators.

      4.    At all relevant times, WG Trading Investors, LP
("WG Investors"), a Delaware limited partnership having its
principal place of business in Greenwich, Connecticut, was a
limited partner in WG Trading.  PAUL GREENWOOD and STEPHEN WALSH,
the defendants, were general partners of WG Investors and
controlled WG Investors.

The Scheme To Defraud

      5.    From at least as early as in or about 1996 through
and including in or about February 2009, PAUL GREENWOOD and
STEPHEN WALSH, the defendants, orchestrated a scheme to defraud
investors in WG Trading and WG Investors.  Through this scheme,
GREENWOOD, WALSH, and others known and unknown, solicited funds
under false pretenses, failed to invest investors' funds as
promised, and misappropriated and converted investors' funds to
the personal benefit of GREENWOOD, WALSH, and others, without the
knowledge or authorization of the investors.

      6.    From at least in or about 1996, through and
including in or about February 2009, PAUL GREENWOOD and STEPHEN

2

WALSH, the defendants, and others known and unknown, solicited
more than $7.6 billion from institutional investors, including
charitable and university foundations, pension and retirement
plans, and other institutions.  GREENWOOD and WALSH, and their
co-conspirators, told investors, both orally and in writing, that
investor funds would be invested pursuant to a strategy called
"equity index arbitrage," which involved buying and
simultaneously selling, through futures, the stocks of a well-
known equity index (such as the Standard and Poors 500 Index (the
"S&P 500 Index")).  The marketing materials provided to investors
for WG Trading and its affiliates represented that the equity
index arbitrage strategy was a low risk strategy that had
consistently outperformed the results of the S&P 500 Index for a
period of more than 10 years.

       7.    At all relevant times, investors were offered the
opportunity to invest in WG Trading through different mechanisms.
First, an investor could purchase a limited partnership interest
in WG Trading.  Second, an investor could invest through WG
Investors by delivering funds to WG Investors in exchange for a
promissory note from WG Investors to the investor, which would
pay interest at a rate similar to the rate of return realized by
a limited partnership interest in WG Trading.  The investors were
told that WG Investors was itself a limited partner of WG
Trading, and that the majority of their funds would be passed

through to WG Trading for investment pursuant to the equity index
arbitrage strategy.  Third, an investor could purchase an
interest in an offshore fund, which in turn would invest the
investor funds through WG Investors in exchange for a promissory
note issued by WG Investors to the offshore fund.

        8.    Contrary to the representations to clients that
their funds would be invested pursuant to the equity index
arbitrage strategy, PAUL GREENWOOD and STEPHEN WALSH, the
defendants, used investor funds to, among other things, finance
their lavish personal lifestyles, meet the periodic redemption
requests of other investors, make payments in connection with an
investment in a publicly traded company that went bankrupt, and
make payments for other investments and loans by WG Trading and
WG Investors.  Further, PAUL GREENWOOD and STEPHEN WALSH, the
defendants, and a co-conspirator not named as a defendant herein
("CC-1"), created and caused others to create false account
statements that were sent to clients to reflect fictitious
returns consistent with the returns that had been promised to
those clients.

        9.    From on or about January 1, 1999, through on or
about February 6, 2009, PAUL GREENWOOD, the defendant, and others
known and unknown, caused WG Investors to divert approximately
$80 million to or for the benefit of GREENWOOD, including
payments which were made by wire transfer from a WG Investors

                              4

account to recipient banks in the Southern District of New York.

From on or about January 1, 1999, through on or about January 9,

2009, STEPHEN WALSH, and others known and unknown, caused WG

Investors to divert approximately $51 million to or for the

benefit of WALSH, including payments which were made by wire

transfer from a WG Investors account to recipient banks in the

Southern District of New York.  These payments were directed to

GREENWOOD and WALSH, to members of their families, to various

entities that they or their family members controlled, and/or to

persons and entities for goods (including antiques and

collectibles) and services purchased by GREENWOOD and WALSH.

    10.   In order to conceal the fact that PAUL GREENWOOD

and STEPHEN WALSH, the defendants, were misappropriating investor

funds, and the fact that neither WG Trading nor WG Investors was

profitable, CC-1, at the direction of GREENWOOD and WALSH,

prepared promissory notes that were issued by GREENWOOD and WALSH

to WG Investors.  From in or about 1998 through in or about 2008,

GREENWOOD issued promissory notes to WG Investors totaling

approximately $293 million ("GREENWOOD Notes").  From in or about

1998 through in or about 2008, WALSH issued promissory notes

totaling approximately $261 million ("WALSH Notes").

    11.   The amount of the GREENWOOD Notes and WALSH Notes

that PAUL GREENWOOD and STEPHEN WALSH, the defendants, issued to

WG Investors included: (a) the funds that were transferred to or

for the benefit of GREENWOOD and WALSH, respectively; (b) the
capitalization of purported investor earnings paid to or accrued
for investors who held notes issued by WG Investors, which
earnings were fictitious and fraudulent; and (c) write-offs in
unprofitable investments that GREENWOOD and WALSH had made
through WG Trading and WG Investors.

### Statutory Allegations

12.   From at least in or about 1996 through in or about
February 2009, in the Southern District of New York and
elsewhere, PAUL GREENWOOD and STEPHEN WALSH, the defendants, and
others known and unknown, unlawfully, willfully, and knowingly
did combine, conspire, confederate, and agree together and with
each other to commit offenses against the United States, to wit:
(1) to commit securities fraud, in violation of Title 15, United
States Code, Sections 78j(b) and 78ff and Title 17, Code of
Federal Regulations, Section 240.10b-5; and (2) to commit wire
fraud, in violation of Title 18, United States Code, Section
1343.

13.   It was a part and object of the conspiracy that
PAUL GREENWOOD and STEPHEN WALSH, the defendants, and others
known and unknown, unlawfully, willfully, and knowingly, directly
and indirectly, by use of the means and instrumentalities of
interstate commerce, the mails and the facilities of national
securities exchanges, would and did use and employ manipulative

and deceptive devices and contrivances in connection with the
purchase and sale of securities, in violation of Title 17, Code
of Federal Regulations, Section 240.10b-5, by (1) employing
devices, schemes and artifices to defraud; (2) making untrue
statements of material facts and omitting to state material facts
necessary in order to make the statements made, in light of the
circumstances under which they were made, not misleading; and (3)
engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon other
persons, in violation of Title 15, United States Code, Sections
78j(b) and 78ff.

14.   It was further a part and object of the conspiracy
that PAUL GREENWOOD and STEPHEN WALSH, the defendants, and others
known and unknown, unlawfully, willfully, and knowingly, having
devised and intending to devise a scheme and artifice to defraud
and for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, namely, a
scheme to defraud investors and enrich themselves at the expense
of investors, would and did transmit and cause to be transmitted
by means of wire, radio, and television communications in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme and
artifice, in violation of Title 18, United States Code, Section
1343.

<u>Overt Acts</u>

15.   In furtherance of the conspiracy and to effect its illegal objects, PAUL GREENWOOD and STEPHEN WALSH, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about July 6, 2007, a wire transfer was effected in the amount of $500,000 to a bank account in New York, New York, that was in the name of WALSH's ex-wife.

b.   On or about November 13, 2007, a wire transfer was effected in the amount of $300,000 to a bank account in New York, New York, that was in the name of GREENWOOD.

c.   On or about January 8, 2008, a wire transfer was effected in the amount of $500,000 to a bank account in New York, New York, that was in the name of WALSH's ex-wife.

(Title 18, United States Code, Section 371.)

## COUNT TWO

### (Securities Fraud)

The Grand Jury further charges:

16.   The allegations contained in paragraphs 1 through 11, and 15, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

17.   From at least in or about 1996 through at least in or about February 2009, in the Southern District of New York and

8

elsewhere, PAUL GREENWOOD and STEPHEN WALSH, the defendants,
unlawfully, willfully, and knowingly, directly and indirectly, by
use of the means and instrumentalities of interstate commerce and
of the mails, and of the facilities of national securities
exchanges, in connection with the purchase and sale of
securities, would and did use and employ manipulative and
deceptive devices and contrivances in violation of Title 17, Code
of Federal Regulations, Section 240.10b-5, by (a) employing
devices, schemes, and artifices to defraud; (b) making untrue
statements of material facts and omitting to state material facts
necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading; and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon persons.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Commodities Fraud)

The Grand Jury further charges:

18.   The allegations contained in paragraphs 1 through
11, and 15, above, are hereby repeated, realleged and
incorporated by reference as if fully set forth herein.

19.   From at least in or about 1996 through at least in
or about February 2009, in the Southern District of New York and

9

elsewhere, PAUL GREENWOOD and STEPHEN WALSH, the defendants, while acting as commodity pool operators and persons associated with a commodity pool operator, unlawfully, willfully, and knowingly, by use of the mails, and of the means and instrumentalities of interstate commerce, directly and indirectly, would and did (a) employ devices, schemes, and artifices to defraud clients and participants, and prospective clients and participants; and (b) engage in transactions, practices, and courses of business which operated and would operate as a fraud and deceit upon clients and participants, and prospective clients and participants.

(Title 7, United States Code, Sections 6o(1) and 13(a)(2) and (5); Title 18, United States Code, Section 2.)

### COUNTS FOUR AND FIVE

#### (Wire Fraud)

The Grand Jury further charges:

20.  The allegations contained in paragraphs 1 through 11, and 15, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

21.  From at least in or about 1996 up through and including in or about February 2009, in the Southern District of New York and elsewhere, PAUL GREENWOOD and STEPHEN WALSH, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent

10

pretenses, representations, and promises, namely, a scheme to defraud investors and enrich themselves at the expense of investors, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, GREENWOOD and WALSH caused, among others, the following interstate fax transmissions from Connecticut to New York directing wire transfers of funds from bank and securities accounts that they controlled to other persons and entities for the purpose of diverting investor funds to their own personal use:

| COUNT | Approximate Date Of Wire Communication | Approximate Amount Of Wire Transfer Referenced In Fax |
|-------|----------------------------------------|-------------------------------------------------------|
| FOUR  | July 6, 2007                           | $500,000                                              |
| FIVE  | November 13, 2007                      | $300,000                                              |

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT SIX

### (Money Laundering)

The Grand Jury further charges:

22.  The allegations contained in paragraphs 1 through 1., and 15, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

23.  From at least in or about 1996 through and including in or about February 2009, in the Southern District of

11

New York and elsewhere, PAUL GREENWOOD and STEPHEN WALSH, the
defendants, in an offense involving and affecting interstate and
foreign commerce, unlawfully, willfully, and knowingly engaged
and attempted to engage in and cause others to engage in a
monetary transaction in criminally derived property that was of a
value greater than $10,000 and was derived from specified
unlawful activity, to wit, GREENWOOD and WALSH caused transfers
of investor funds derived from fraud in the sale of securities
and wire fraud to be transferred to bank accounts in their names,
in the names of their family members, and to other individuals
and entities for their own personal benefit, which transfers were
neither disclosed to nor authorized by the investors.

(Title 18, United States Code, Sections 1957 and 2.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, FOUR, AND FIVE

24. As the result of committing the securities and
wire fraud offenses alleged in Counts One, Two, Four, and Five of
this Indictment, PAUL GREENWOOD and STEPHEN WALSH, the
defendants, shall forfeit to the United States, pursuant to Title
18, United States Code, Section 981(a)(1)(C) and Title 28, United
States Code, Section 2461, all property, real and personal, that
constitutes or is derived from proceeds traceable to the
commission of the offenses, including but not limited to the
following:

12

a. At least $131,000,000 in United States
currency, in that such sum in aggregate is property representing
the amount of proceeds obtained as a result of the charged
securities and wire fraud offenses.

<u>Substitute Asset Provision</u>

25.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendants,

a.    cannot be located upon the exercise of due
      diligence;

b.    has been transferred or sold to, or deposited
      with, a third person;

c.    has been placed beyond the jurisdiction of
      the Court;

d.    has been substantially diminished in value;
      or

e.    has been commingled with other property which
      cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the defendant up to the value of the
forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
   Title 21, United States Code, Section 853(p);
and Title 28, United States Code, Section 2461.)

**FORFEITURE ALLEGATION AS TO COUNT SIX**
(Money Laundering)

26.   As the result of committing the money laundering
offense alleged in Count Six of this Indictment, PAUL GREENWOOD

13

and STEPHEN WALSH, the defendants, shall forfeit to the United

States, pursuant to Title 18, United States Code, Section 982,

all property, real and personal, involved in the money laundering

offenses and all property traceable to such property.

### Substitute Asset Provision

27.    If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

        a.    cannot be located upon the exercise of due
diligence;

        b.    has been transferred or sold to, or deposited
with, a third person;

        c.    has been placed beyond the jurisdiction of
the Court;

        d.    has been substantially diminished in value;
or

        e.    has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b) and Title 21, United States

Code, Section 853(p), to seek forfeiture of any other property of

the defendants up to the value of the forfeitable property

described above.

(Title 18, United States Code, Section 982
and Title 21, United States Code, Section 853(p).)

_____    _lev L. Dassin_____
Foreperson                 LEV L. DASSIN
                           Acting United States Attorney

14

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### PAUL  GREENWOOD, and
### STEPHEN  WALSH,

Defendant.

### INDICTMENT

09 Cr.

Title 18, United States Code, Sections
371, 981, 1343, 1957; Title 15, United
States Code, Sections 78j(b), 78ff; Title
17, Code of Federal Regulations, Sections
240.10b-5; Title 21, United States,
Section 853(p); and Title 7, United
States Code, Section 6o(1) and 13(a)(2)
and (5)

LEV L. DASSIN
Acting United States Attorney.

**A TRUE BILL**

7-24-09

Foreperson.

*[handwritten notations]*