UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,                    :

                                                    09 Cr. 722 (MGC)

                                         :

        - v -

                                         :

PAUL GREENWOOD,
STEPHEN WALSH,                                    :

                Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMMODITY FUTURES TRADING            :
COMMISSION,

                                         :      09 Civ. 1749 (GBD)

                Plaintiff,        :

                                         :

        -v-                                    :

STEPHEN WALSH, ET AL.,                    :

                Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE                :
COMMISSION,

                                         :      09 Civ. 1750 (GBD)

                Plaintiff,        :

                                         :

        -v-                                    :

WG TRADING INVESTORS, LP, ET AL.,    :

                Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF BRICK KANE

      I, BRICK KANE, do hereby declare under penalty of perjury pursuant to 28 U.S.C. §

1746 as follows:

           1.        I am the Chief Operating Officer of Robb Evans & Associates LLC

("Robb Evans"), which was appointed by the Court in CFTC v. Walsh, et al., 09 Civ. 1749

(GBD) ("CFTC Action"); and SEC v. WG Trading Company LP, et al., 09 Civ. 1750

(GBD)("SEC Action"), to act as receiver over the defendants and relief defendants in the CFTC

and SEC actions (the "Receiver").

      2.     Pursuant to the Court's Orders, Robb Evans serves as the Receiver over

WG Trading Company Limited Partnership ("WG Trading"), WG Trading Investors, L.P. ("WG

Investors"), Westridge Capital Management, Inc. ("Westridge"), and business entities owned or

affiliated with them, and also serves as receiver over the assets of individual defendants Paul

Greenwood ("Greenwood") and Stephen Walsh ("Walsh"). This declaration is based upon my

personal knowledge, and my review of books and records in the possession of the Receiver.

      3.     On May 27, 2009, the Receiver filed a report of its activities in the CFTC

Action and the SEC Action (CFTC Action, Dkt. No. 110; SEC Action Dkt. No. 102). In its

report, the Receiver stated that investor claims preliminarily total about $1.5 billion, and that

based on all of the information available to the Receiver it appears that there will be a shortfall of

approximately $600 million.

      4.     Pursuant to its review of the books and records, the Receiver found that

WG Investors paid approximately $80 million to or for the benefit of Greenwood between at

least January 1, 1999 through February 6, 2009. A spreadsheet showing the payments to or for

the benefit of Greenwood and his affiliates and family members is attached as Exhibit A.

      5.     Pursuant to its review of the books and records, the Receiver found that

WG Investors paid approximately $51 million to or for the benefit of Walsh between at least

January 1, 1999 through February 6, 2009. A spreadsheet showing the payments to or for the

benefit of Walsh and his affiliates and family members is attached as Exhibit B.

**The Promissory Notes And The Receiver's Demand For Payment**

6.       From January 1998 through and including January 2008, Greenwood and

Walsh each issued promissory notes in favor of WG Investors.   On March 1, 1996, Greenwood

and Walsh jointly issued a promissory note to WG Investors in the amount of approximately $23

million ("1996 Note").   In addition, between December 31, 2008 and February 6, 2009,

Greenwood and Walsh took advances from WG Trading Investors that were not memorialized on

promissory notes as of the date the receivership commenced.   These advances totaled

approximately $8.9 million.   Attached as Exhibit C is a schedule summarizing the notes

receivable and employee advances due from Greenwood and Walsh to WG Investors.   The total

amount due from Greenwood for the notes and the advances is approximately $298 million.   The

total amount due from Walsh for the notes and advances is approximately $264 million.

7.       All of the Greenwood Notes and the Walsh Notes state that each

respective note is "due and payable under 90 days written notice from [WG Investors]."

8.       In or about March 2009, the Receiver's counsel sent letters to counsel for

Greenwood and Walsh demanding payment of approximately $298 million and $264 million,

respectively, pursuant to the terms of the promissory notes and the employee advances.   Copies

of these letters, and the related promissory notes, are attached as Exhibits D (demand upon

Greenwood) and E (demand upon Walsh).

**The Walsh Residence**

9.       I am familiar with the residence owned by Stephen Walsh at 7 Half Moon

Lane, Sands Point, New York (the "Walsh Residence").   I understand that Walsh has submitted a

declaration in which he claims that in 2007 a real estate broker told him that the Walsh

Residence may sell for between $7 and $10 million.   In or about April and July, 2009, the

Receiver obtained appraisals of the Walsh Residence from two New York State certified appraisers of real estate. These appraisals are substantially lower than the 2007 value proffered by Walsh.[1]

10.     I have reviewed account statements and other records of activity for the period of January 2, 2004 through March 1, 2009 in an account maintained at Citibank, N.A., in the name of Stephen Walsh. I have attached a spreadsheet reflecting certain receipts and disbursements in that account as Exhibit F.

11.     I am familiar with the Stipulation of Settlement and Agreement, dated November 1, 2006 ("Separation Agreement"), between Stephen Walsh and Janet Walsh. A copy of Janet Walsh's Declaration dated March 2, 2009, which was filed in the CFTC Action (CFTC Action, Dkt. No. 10), is attached as Exhibit G. The Separation Agreement is attached as an exhibit to that declaration. Pursuant to the terms of the Separation Agreement, among other things, Janet Walsh, who was the owner of the Walsh Residence, agreed to transfer all of her right, title, and interest in the Walsh Residence to Walsh. (Separation Agreement, ¶¶ 4.5(a)-(b)). Among other things, Walsh agreed to pay to Janet Walsh a distributive award in the amount of $12,500,000, pursuant to a payment schedule that contemplated semi-annual payments to Janet Walsh of $500,000 for the years from 2006 through 2016, and $250,000 for the years 2016 through 2021. (Separation Agreement, ¶¶ 4.10(a)(i)-(ii)).

12.     I have reviewed the records of a brokerage account in the name of WG Investors. After November 1, 2006, WG Investors made the following transfers of funds to Janet

---

[1]     Because the Receiver intends to sell the Walsh Residence, I believe that public disclosures of the 2009 appraisals may adversely affect the Receiver's ability to maximize the price that the Receiver obtains for the Walsh Residence. If the Court desires, the appraisals can be provided to the Court under seal.

Walsh:

| Date | Amount |
|---|---|
| 1/8/2007 | $500,000 |
| 7/6/2007 | $500,000 |
| 1/8/2008 | $500,000 |
| 7/8/2008 | $500,000 |
| 1/8/2009 | $500,000 |
| **Total** | $2,500,000 |

In addition, the records of a brokerage account in the name of WG Investors further reflect that funds in the amount of $100,000 were transferred to Janet Walsh on June 1, 2006, June 30, 2006, August 3, 2006, September 1, 2006, September 29, 2006, and November 1, 2006, for a total during those time periods of $600,000. The Separation Agreement provides that "[Walsh] shall be given credit toward his obligation under subparagraph (a)(i) for payments which have been made in the sum of $100,000 on or about July 10, 2006, August 10, 2006, September 10, 2006, and October 10, 2006 and such other payments thereafter made prior to the signing of this stipulation." (Separation Agreement, ¶ 4.10(a)(iii)).

**Greenwood's Collectibles**

13.    In or about September 2009, the Receiver obtained estimates of the value of Greenwood's collection of Steiff Teddy Bears & Toys, antique furniture, rare books, and

other collectibles.    These assets are not liquid, and any estimate of their value is only a statement

of opinion.    Until the specific item is actually sold, it is not possible to prescribe a specific value

to it.

Dated: January 14, 2010
      Sun Valley, CA

                                    Brick Kane